IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

Karen J.,[1]                                              No. 6:20-cv-02136-HL

              Plaintiff,                        **OPINION AND ORDER**

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Karen J. brings this action under the Social Security Act (the "Act"), 42 U.S.C. §

405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the

"Commissioner").  The Commissioner denied Plaintiff's application for Disability Insurance

Benefits ("DIB") and Social Security Income ("SSI") under Title II of the Act.  42 U.S.C. § 401

---

[1]      In the interest of privacy, this Opinion and Order uses only the first name and the
initial of the last name for non-governmental parties and their immediate family members.

*et seq*.  For the following reasons, this case is REVERSED and REMANDED for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on "PTSD, Bipolar, Paranoid Personality, mental health issues, Depression, Anxiety, and hip and wrists." Tr. 174.[2]  At the time of her amended alleged onset date, she was 39 years old. Tr. 13, 22. She has a high school education and no past relevant work experience.  Tr. 22-23.

Plaintiff protectively applied for DIB on July 3, 2018, alleging an amended onset date of July 3, 2018.  Tr. 13.  Her application was denied initially on July 25, 2019, and on reconsideration on August 13, 2019.  Tr. 13.  Plaintiff subsequently requested a hearing, which was held on March 3, 2020, before Administrative Law Judge ("ALJ") John Sullivan.  Tr. 24, 29-55.  Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Jaye Stutz, also testified.  Tr. 13, 49-55. On July 1, 2020, the ALJ issued a decision denying Plaintiff's claim.  Tr. 24.  Plaintiff requested Appeals Council review, which was denied on October 13, 2020.  Tr. 1.  Plaintiff then sought review before this Court.[3]

### II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

---

[2]      Citations to "Tr." are to the Administrative Record.  (ECF 13-1).

[3]      The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 6).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her amended alleged onset date of July 3, 2018. Tr. 15.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "bipolar disorder, social anxiety disorder, posttraumatic stress disorder (PTSD), and personality disorder." Tr. 15. The ALJ also determined that Plaintiff had hearing loss, which was non-severe. *Id.*

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 15. The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple, routine tasks and make simple work-related decisions. She is to interact occasionally with coworkers, supervisors, and the public. Her time off-task can be accommodated by regular work breaks.

Tr. 17.

At step four, the ALJ found that Plaintiff did not have any past relevant work. Tr. 22.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a hand packager, laundry worker I, and industrial cleaner. Tr. 11. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

**DISCUSSION**

Plaintiff contends that the ALJ committed three errors: (1) failing to provide legally sufficient reasons supported by substantial evidence to discount the assessment of Licensed Professional Counselor ("LPC") Indra Dissanayake; (2) failing to give clear and convincing reasons to reject Plaintiff's subjective symptom testimony; and (3) failing to capture in Plaintiff's RFC her moderate limitations in concentration, persistence, or pace and social limitations. Pl. Opening Br. 2-19, ECF 14. As is explained below, the Court finds that the ALJ's decision to discount LPC Dissanayake's testimony and partially reject Plaintiff's testimony was supported by substantial evidence, and the ALJ did not commit any harmful legal error. However, the ALJ erred in failing to capture Plaintiff's limitations when computing her RFC. Accordingly, this case is remanded for further proceedings consistent with this order.

## I.   Medical Evidence from LPC Dissanayake

### A.    *Legal Standards*

For claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168818, 82 Fed. Reg. 5844-01, at *5867-68 (Jan. 18, 2017). Under the new regulations, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using factors. *Id.* The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or

she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his or her] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain how he considered other factors—such as relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose of the treatment relationship; extent of the treatment relationship; the examining relationship; or the doctor's specialization—unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but are not identical. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3). Moreover, in reviewing the ALJ's decision, the court must consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(j); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

B.    *Analysis*

Plaintiff submitted evidence from her Behavioral Counselor, LPC Dissanayake, which included counseling notes, a mental RFC assessment, and a summary letter. Tr. 596-605, 644-47, 648. Based on her treatment of Plaintiff, LPC Dissanayake concluded in December 2019 that Plaintiff "is having a very hard time interacting with the public, working with others due to suffering from Social Anxiety"; her PTSD symptoms are "big barriers in following through any instructions, completing detailed tasks, paying attention and completing detailed/complex tasks";

she "is struggling with depressive and anxious symptoms that [are] making it difficult to get up at a regular time and doing 8 hours job 5 times a week"; and she "gets extremely anxious over simple routine changes that leads to freezing and [being] unable to function."  Tr. 648.

The ALJ found that LCP Dissanayake's opinions were "unpersuasive," and he did not credit them in his decision.  Tr. 22.  Plaintiff now challenges this finding, asserting that the ALJ's conclusion that LCP Dissanayake's opinion was inconsistent with the record was not supported by substantial evidence and lacked an adequate explanation. Pl. Opening Br. 2-11. This Court disagrees and instead finds that the ALJ's conclusion was supported by substantial evidence and specifically accounted for the supportability and consistency factors.

With respect to the supportability factor,[4] the ALJ noted that LPC Dissanayake "opined that the claimant has 'severe' limitations on 11 of the 20 specific abilities listed on the representative-supplied checkbox form" for conducting a medical RFC assessment and also provided a letter that "generally summarizes the claimant's alleged symptoms."  Tr. 22 (citing Tr. 644-648). The ALJ found that LPC Dissanayake's letter "generally summarize[d] [Plaintiff's] alleged symptoms" rather than relying on objective medical evidence.  Tr. 22. Although the ALJ did not use the term "supportability," the relevance of the objective medical evidence and the adequacy of the explanation for rejecting the opinion are factors that bear directly on the supportability of a medical opinion.  *See* 20 C.F.R. § 416.920c(c)(1) (2017) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical

---

[4]     Plaintiff does not specifically challenge the ALJ's findings with respect to supportability and instead focuses on the findings regarding inconsistency.  *See* Pl. Opening Br. 2-11.

opinions . . . will be."). Accordingly, the ALJ specifically accounted for the supportability of LPC Dissanayake's opinion, and that account was based on substantial evidence.

With respect to the consistency factor, the ALJ found LPC Dissanayake's "opinion regarding the severity of [Plaintiff's] symptoms to be inconsistent with the record discussed above, including Dr. [Robert] Basham's examination reports, treatment notes from Dr. [Michael] Leasure, and the therapy and case management notes from [the Laurel Hill Center]." Tr. 22. This explanation, which referenced the ALJ's prior discussion of the record, was sufficient to "specifically account" for the reasons that he believed that LPC Dissanayake's opinion was inconsistent with the other medical opinions. *See Robert S.*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 ("[t]he new regulations still require the ALJ to explain her reasoning for discounting a medical opinion from a treating or examining physician to allow for meaningful judicial review.").

Moreover, the ALJ's ultimate conclusion—that LPC Dissanayake's opinion regarding the severity of Plaintiff's symptoms was inconsistent with the record—was supported by substantial evidence. With respect to Dr. Basham's evaluation, the limitations that LPC Dissanayake identified in understanding, memory, sustained concentration, and persistence, *see* Tr. 645-46, 648, conflicted with intellectual functioning tests administered by Dr. Basham, which demonstrated that Plaintiff had "no sign of problems in her basic mental abilities." Tr. 265-66. In addition, the multiple, severe limitations that LPC Dissanayake identified were inconsistent with Plaintiff's self-report to Dr. Basham concerning her then-present employment, progress while on medication, and her ability to function. Tr. 265-66. With respect to Dr. Leasure's treatment notes, Dr. Leasure conducted multiple psychiatric exams with findings of appropriate mood and affect, no anxiety, no mood swings, and normal memory, Tr. 279, 283, 288, 294, 298,

305, 308, which is again not consistent LPC Dissanayake's opinion on Plaintiff's conditions.  Tr. 648.  Finally, there are at least some inconsistencies between the LHC's notes and LPC Dissanayake's opinions, such as Plaintiff's reports of having fun singing karaoke out of the house, Tr. 556, even though LPC Dissanayake opined that Plaintiff is "unable to be in crowds" and "feels intends fear in any social situation."  Tr. 648.

To be sure, Plaintiff correctly identifies portions of Dr. Basham's evaluation, Dr. Leasure's treatment notes, and LPC Dissanayake's notes that were *consistent* with the additional limitations endorsed by LPC Dissanayake.  *See*. Pl. Br. 4-7; Pl. Reply Br. 2-5, ECF 17.  But under substantial evidence review, this Court "may not reweigh the evidence."  *Winans v. Bowen*, 853 F.2d 643, 644-45 (9th Cir. 1987).  Rather, the ALJ was entitled to rely on the identified inconsistencies in discounting LPC Dissanayake's opinion. Accordingly, there was substantial evidence to support the ALJ's conclusion that LPC Dissanayake's opinion was inconsistent with the other evidence in the record, and the ALJ did not err in concluding that LPC Dissanayake's opinion was unpersuasive.

## II.    Plaintiff's Subjective Symptom Testimony

### A.    *Legal Standards*

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms.  *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that she does not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Even if there is some error, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless when it is inconsequential to the ultimate non-disability decision. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (quoting *Shineski v. Sanders*, 556 U.S. 396, 409 (2009)). The Ninth Circuit has repeatedly "held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina*, 674 F.3d at 1115. In such scenarios, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

B.    *Analysis*

As summarized by the ALJ, Plaintiff testified that

she is unable to sustain fulltime work activity because she is 'not reliable.' She alleges she loses control when she is angry. She stated she does not like being in

crowds and 'hates' shopping. . . . She also alleges that she has difficulty
maintain[ing] focus and attention. . . . She alleges that she has poor sleep, in part,
due to nightmares related to past abuse.

Tr. 17.  The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record."  Tr. 18.

    Plaintiff takes issue with the ALJ's following findings and his reliance on those findings

to discount her testimony:  (1) She "showed some improvement in her symptoms"; (2) she "still

desires to work, which arguably is inconsistent with her current allegation of disability"; (3)

while she alleged that she tends to isolate, "the record shows she attends regular biweekly case

management services at LHC and that she has left her home in efforts to find work and to sing

karaoke"; and (4) her treatment has been "routine, conservative" without "any emergency

department visits for psychiatric crises" or "any psychiatric hospitalizations." Pl. Opening Br. 12

(citing Tr. 18-21).  Plaintiff now asserts that these findings are incorrect and do not constitute

clear and convincing evidence sufficient to reject Plaintiff's subjective symptom testimony.  The

Court is unconvinced and instead finds that the ALJ did not arbitrarily discredit Plaintiff's

testimony.

    First, there was substantial evidence in the record that Plaintiff had shown improvement

in her symptoms after treatment and counselling, which the ALJ was entitled to rely on to

discount her subjective complaints.  *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) ("An ALJ may

discount a claimant's subjective complaints if the record shows effective treatment.").  During

the relevant time period, Dr. Leasure noted that, a few weeks after Plaintiff had started

medications, her bipolar disorder was "improving significantly."  Tr. 310.  Both Dr. Leasure's

notes and LPC Dissanayake's records also discuss improvement, as did Plaintiff's self-reports to

her providers.  *See* Tr. 265, 277, 281, 303, 306, 310, 314.  To be sure, Plaintiff continued to

experience limitations during this time period.  *See* Tr. 475-78; 625.  Moreover, this Court is

mindful that "[r]eports of 'improvement' in the context of mental health issues must be

interpreted with an understanding of the patient's overall well-being and the nature of her

symptoms."  *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  But when considering the

record as a whole, there was substantial evidence that Plaintiff's treatment was having some

effect, and the ALJ was entitled to rely on this evidence to discount Plaintiff's subjective

symptom testimony.

Second, the ALJ properly relied on Plaintiff's work activity and desire to work when

discounting her testimony that she is unable to sustain fulltime work.  The ALJ relied on the fact

that, "for the last three months [Plaintiff] had been working 30 hours a week doing market

research. However, she did not like the job 'because people wind up yelling at her a lot and she

is looking for something new.'"  Tr. 18.  The ALJ was entitled to rely on this work activity—

along with other contemporaneous records that indicate that she was doing "mostly well" at the

job—to discount her testimony in part.  *See Ford*, 950 F.3d at 1156 ("ALJ may consider any

work activity, including part-time work, in determining whether a claimant is disabled.").

Although Plaintiff argues that another interpretation of Plaintiff's employment history and

current work activity was reasonable, Pl. Br. 14-16, that is not a legitimate reason for overturning

the ALJ's conclusions. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014).

Plaintiff also takes issue with the ALJ's statement that Plaintiff "still desires to work,

which is arguably inconsistent with her current allegation of disability," asserting that the Ninth

Circuit has "long rejected penalizing claimants for attempting employment." Pl. Br. 16.  Plaintiff

cites *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007), which stated that "evidence

that a claimant tried to work and failed actually supported his allegations of disabling pain."  In

this case, however, the ALJ was not penalizing the plaintiff for attempting to look for work.

Rather, he was considering whether the plaintiff's attempts at finding employment and actual

employment were consistent with her reports of disabling symptoms.  This was permissible.  *See,*

*e.g., Kendra K. v. Comm'r of Soc. Sec.*, No. 2:18-CV-00226-MKD, 2019 WL 2061961, at *7

(E.D. Wash. May 9, 2019) (ALJ's finding that the "plaintiff's attempts at employment and her

lack of reporting an inability to work due to physical or mental disability to medical providers

were inconsistent with her reported disabling symptoms during the relevant period" was "rational

and supported by substantial evidence").

Third, the ALJ was entitled to consider Plaintiff's activities of daily living that were

inconsistent with her claimed disabilities.  An "ALJ may consider inconsistent statements by a

claimant in assessing her credibility."  *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017).

Contradiction with a claimant's activities of daily living is a clear and convincing reason for

rejecting a claimant's testimony.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Plaintiff focuses on the ALJ's finding that she was able to sing karaoke and "enjoyed it" to

discredit her testimony regarding her fear of leaving the house.  Pl. Br. 16.  The ALJ's findings,

however, were not based on one night of karaoke; rather, he also pointed to her part-time work;

efforts with the Oregon Department of Human Services and "ability to work[] and navigat[e] the

community independently and successfully"; and her acts of applying for jobs and sitting for a

job interview.  Tr. at 17-21.  The ALJ properly considered this record as whole—not just one

instance of social interaction—to discount her testimony.

In reaching this conclusion, however, this Court discounts the ALJ's reliance on

Plaintiff's attendance at LHC counselling sessions to discredit her claim that she tends to isolate.

*See* Tr. 21 ("[T]he record shows she attends regular biweekly case management services at LHC."). Plaintiff's attendance at counselling sessions—which the ALJ found to improve Plaintiff's mental health conditions—cannot be used against her as a reason to find that she is not disabled. *See Hernandez-Devereaux v. Astrue*, 614 F. Supp. 2d 1125, 1149 (D. Or. 2009) ("[T]he fact that [the] plaintiff is able to attend scheduled medical appointments is not a clear and convincing reason for finding her not disabled.").

Finally, the ALJ was entitled to discount Plaintiff's subjective testimony of a disabling mental health condition when that testimony was contradicted by medical evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008). Plaintiff alleges that the ALJ could not rely on the lack of psychiatric crisis or hospitalizations to support this finding, but that is not what occurred here. The ALJ also relied on treatment notes that indicated that Plaintiff was benefiting from psychotropic medications and "[m]ore importantly, no treating or examining clinician has described [Plaintiff] as exhibiting chronic disturbances of mood, affect, cognition, sensorium, interpersonal functioning, grooming, or hygiene that would reflect an inability to engage in fulltime work activity." Tr. 21. The ALJ was entitled to rely on these findings, which were supported by substantial evidence, to conclude that the objective medical evidence contradicted Plaintiff's subjective symptom testimony.

In reaching this conclusion, however, the Court rejects the ALJ's reliance on any "routine, conservative" treatment to contradict Plaintiff's testimony. *See* Tr. at 21. Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). However, "[b]ecause the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit Plaintiff 'for failing to pursue non-

conservative treatment options where none exist.'"  *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)). Thus, the Court does not consider the ALJ's finding that Plaintiff had "routine, conservative" treatment to discredit Plaintiff's testimony.

This record—when considered as a whole—provides clear and convincing evidence for the ALJ's partial rejection of Plaintiff's testimony.  Although the ALJ provided two invalid reasons for disbelieving Plaintiff's testimony, he also provided multiple, valid reasons that were supported by the record.  Thus, the record still provides multiple "specific, clear and convincing reasons" for rejecting Plaintiff's testimony, which is sufficient to affirm the ALJ's findings. *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")).

## III.    Plaintiff's RFC

### A.    *Legal Standards*

The RFC is the most a person can do despite her physical or mental impairments. *See* 20 C.F.R. § 404.1545. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; *see also* Social Security Ruling ("SSR") 96-8p, *available at* 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th

Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC). "Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." *Kimberley A. v. Kijakazi*, No. 2:20-CV-01802-SB, 2022 WL 19203, at *5 (D. Or. Jan. 3, 2022) (citations omitted).

      B.    *Analysis*

          i.    Concentration, Persistence, and Pace

The ALJ found that "[w]ith regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation." Tr. 16. He concluded that "[i]n consideration of the testing administered by Dr. Basham and the likely cognitive distraction caused by the claimant's psychological symptoms, the [RFC] limits her to performing simple, routine tasks and to making simple work-related decisions." Tr. 21. The RFC stated that Plaintiff "is able to perform simple, routine tasks and make simple work-related decisions. . . . Her time off-task can be accommodated by regular work breaks." Tr. 17. At the hearing, the ALJ stated to the VE that Plaintiff's "[t]ime off task would be able to be accommodated by *normal* breaks." Tr. 50.

Plaintiff argues that the RFC's limitation fails to adequately account for her moderate limitations in concentrating, persisting, and maintaining pace. Pl. Br. 18. This Court agrees. "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174. Both parties acknowledge the numerous cases from this District that have held that, in the absence of a medical opinion specifically translating the limitations into the capacity to carry out simple tasks, limitations in the RFC such as "simple tasks" or other general terms do not account for moderate limitations in concentrating, persisting,

or maintaining pace.  Pl. Br. 18 (collecting cases); Def. Br. 11, ECF 16.  The Commissioner argues, however, that this case is distinguishable because the RFC also stated that Plaintiff's time off task can be accommodated by regular breaks.  *Id.* at 11-12.  This Court disagrees.

Because there was no medical opinion translating Plaintiff's limitations on concentration, persistence, and pace into "the capacity to carry out simple tasks," and because there was no medical opinion stating that Plaintiff's time off task can be accommodated by regular or normal work breaks, the RFC in this case was not supported by substantial evidence.  To be sure, "the ALJ's finding that Plaintiff is moderately limited in concentration, persistence, and pace . . . did not require the ALJ to assess a specific degree of functional limitation in the RFC."  *Kimberley A. v. Kijakazi*, No. 2:20-CV-01802-SB, 2022 WL 19203, at *6 (D. Or. Jan. 3, 2022).  But the RFC must capture the limitations in the medical testimony.  *See Stubbs-Danielson*, 539 F.3d at 1174.  Here, the ALJ relied on Dr. Basham's opinion to limit Plaintiff to simple, routine tasks, despite finding that Dr. Basham's opinion "does not include a formal opinion regarding the claimant's specific vocational abilities and limitations."  Tr. 21.  And the ALJ did not identify evidence in the record from which he could have concluded that regular or normal work breaks could account for Plaintiff's moderate limitations.[5]  Accordingly, this Court concludes that the limitations in the RFC were not supported by substantial evidence.

        ii.       Interaction with Others

The ALJ also found that "[i]n interacting with others, [Plaintiff] has a moderate limitation."  Tr. 16.  He concluded that "[i]n consideration of her reported anxiety in crowds and

---

[5]      It is unclear how "regular breaks" alone would ever be sufficient to accommodate Plaintiff's mental health limitations.  Every worker is entitled to regular or normal work breaks.  Tr. 52.  Stating that Plaintiff's time off task can be accommodated by "normal" work breaks is akin to stating that her time off task is not a limitation at all.

isolative behavior, and the likely irritability caused by her psychological symptoms, the [RFC] limits her to having no more than occasional interaction with coworkers, supervisors, and the public." Tr. 22.  The ALJ concluded that Plaintiff's RFC limits her "to interact occasionally with coworkers, supervisors, and the public." Tr. 17.

Plaintiff argues that "the RFC limitation to 'interact occasionally with coworkers, supervisors, and the public' did not adequately encompass [her] limitations."  Pl. Br. 19 (citing Tr. 17).[6]  Plaintiff cites to *Jack W. v. Comm'r*, No. 3:19-CV-00507-CL, 2021 WL 879043, at *16 (D. Or. Mar. 9, 2021), which held that a similar limitation was not supported by substantial evidence.  In *Jack W.*, that court's decision was based on the ALJ's improper rejection of two mental health professionals' opinions that specifically addressed the claimant's ability to function in an occupational setting.  *Id.* at *6, *16.  Here, this Court has concluded that the ALJ did not err in rejecting LPC Dissanayake's opinion and rejecting in part Plaintiff's subjective symptom testimony.  *Jack W.* is therefore distinguishable.  Moreover, the ALJ here examined evidence concerning Plaintiff's ability to interact with others, including her own testimony, and the ALJ translated that evidence into Plaintiff's RFC.  Tr. 17-21.  That potion of the RFC was supported by substantial evidence, at least on this record.[7]

## IV.    Remand for Further Proceedings

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits.  *See, e.g., Stone v. Heckler*, 761 F.2d

---

[6]    The Commissioner does not directly address this issue, instead asserting that Plaintiff has waived this issue by failing to offer specific evidence in support of it.  Def. Br. 12.  This Court finds that Plaintiff argued this issue with sufficient specificity and will address it.

[7]    Because this case is being remanded for open proceedings, this Court does not foreclose the possibility that the ALJ may need to modify the portions of the RFC regarding Plaintiff's interactions in light of any additional evidence that may be introduced in the record.

530, 533 (9th Cir. 1985).  Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). Where "an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).

This Court's finding that the RFC was not supported by substantial evidence in this case necessitates remand for additional proceedings.  On remand, the ALJ shall reformulate the RFC consistent with the evidence of Plaintiff's impairments and may receive testimony from the VE in light of the updated RFC.  In addition, there are factual conflicts about Plaintiff's RFC that may need to be resolved on remand.  The only expert who specifically opined on Plaintiff's ability to function in a vocational setting was LPC Dissanayake, whose "representative-supplied checkbox" form was not credited by the ALJ.  *See* Tr. 22.  This lack of credited testimony concerning Plaintiff's specific vocational limitations creates an uncertain and ambiguous record. Accordingly, any conflicts regarding Plaintiff's RFC should be resolved through further proceedings on an open record.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015) (noting factual conflicts about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance").

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings consistent with this Order.

IT IS SO ORDERED.

DATED this 19th day of January, 2022.

_____
ANDREW HALLMAN
United States Magistrate Judge